810 A.2d 519

**MONTGOMERY COUNTY, Maryland,**

v.

**FRATERNAL ORDER OF POLICE MONTGOMERY COUNTY LODGE 35, INC.**

**No. 2339, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Nov. 4, 2002.

Karen L. Federman Henry, Principal Counsel (Charles W. Thompson, Jr., County Attorney and Davis E. Stevenson, Associate County Attorney on the brief), Rockville, for appellant.

Carla M. Siegel (Zwerdling, Paul, Leibig, Kahn & Wolly, P.C. on the brief), Alexandria, VA, for appellee.

Argued before JAMES R. EYLER, SHARER and THEODORE G. BLOOM, (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

The question presented by this case is whether the circuit court erred in denying a petition to vacate an arbitrator's decision based on an assertion that the arbitrator had exceeded his powers and there was no valid agreement to arbitrate the matter in dispute. *See Maryland Uniform Arbitration Act* (MUUA), Md.Code (1998 Repl.Vol.), Cts. & Jud. Proc., §§ 3–201—3–234.[1] The arbitrator was appointed pursuant to

---

1. Section 3–206 provides that the MUAA does not apply to arbitration agreements between employers and employees unless the agreement

a collective bargaining agreement following the filing of a grievance on behalf of a police officer. The principal argument in support of the petition to vacate was that the *Law Enforcement Officers' Bill of Rights* (LEOBR), Md.Code Ann. (1996 Repl.Vol.), art. 27, § 727, et seq., provides the exclusive procedure and remedy governing the rights of police officers in disciplinary proceedings and thus preempts the subject matter. An additional argument was that the dispute between the parties is not within the scope of the collective bargaining agreement. For the reasons discussed below, we shall reverse the judgment of the circuit court and remand with instructions to vacate the arbitrator's decision.

## Factual Background

On October 26, 1998, the Chief of the Montgomery County Police Department suspended Officer Diane Quinn with pay, based on an alleged incident. Officer Quinn was a member of the police department of Montgomery County, appellant, and a member of the Fraternal Order of Police, Montgomery County Lodge 35, Inc., appellee. Officer Quinn was advised that she had the right to an emergency suspension hearing before a board consisting of one member, without the right to present witnesses and documents.

On December 15, 1998, appellee filed a grievance on behalf of Officer Quinn, asserting that an emergency suspension review had to be conducted by a three member board. The grievance was filed, pursuant to the terms of a collective bargaining agreement (CBA) between appellant and appellee in effect from July 1, 1998 through June 30, 2001.[2]

In order to understand the grievance, it is helpful to provide some background information. Section 727(d) of the LEOBR defines a hearing board as consisting of not less than three

---

expressly provides that the MUAA applies. The agreement involved in this case contained such an express provision.

2. In 1980, the Montgomery County Charter was amended to mandate collective bargaining and binding interest arbitration between the County and its police officers.

members. Appellant admits that the longstanding practice had been that emergency suspension hearings were held before a board consisting of three members and that the presentation of witnesses and documents had been permitted. A police department directive, Function Code 301.C, so provided. In 1989, LEOBR, section 727(d)(2) was amended to permit an agency that has certified an exclusive collective bargaining representative, such as the Montgomery County Police Department, to negotiate with that representative an alternate method of forming a hearing board. In 1990, the parties negotiated an addition to the existing CBA that laid out the details of the alternate method of forming a hearing board. The amendment also provided that a police officer could elect the alternate method except in cases where summary punishment is imposed, pursuant to LEOBR section 734A, and where a hearing is convened, pursuant to LEOBR section 734A(2)(iii), which governs emergency suspensions with pay. After the 1990 agreement, Function Code 301.C was amended to include the alternate method of forming a hearing board, but the three member procedure continued to apply to emergency suspension hearings. The language negotiated in 1990 appears in article 43 of the CBA, which was in effect at the time that the dispute arose.

In the grievance, appellee pointed out the longstanding practice and the content of Function Code 301.C. According to the grievance, the composition of emergency suspension hearing boards was a permitted subject of negotiation in the collective bargaining process; the parties negotiated an alternate method of forming a hearing board; and the parties agreed that the alternate hearing method did not apply to emergency suspension hearings. Finally, according to the grievance, the change from a three member to a one member board was done without bargaining and without following the procedures set forth in article 61 of the CBA, governing the changing of directives and administrative procedures.

Appellant denied relief on the ground that the issue was not within the scope of the CBA and was not a permissible subject for negotiation because it was governed exclusively by the

LEOBR.[3]  Specifically, appellant pointed to article 45 of the CBA, which expressly states that only non-LEOBR personnel actions give rise to the right to grieve and/or arbitrate, pursuant to the procedures set forth in article 8 of the CBA.

Following efforts on behalf of the parties to resolve the dispute themselves, appellee requested arbitration, and the matter was assigned to an arbitrator.  Appellant did not seek to prevent the arbitration proceeding, but at the hearing before the arbitrator, appellant contended that the issue in dispute between the parties, *i.e.*, the composition of the hearing board, was not arbitrable for the reasons stated above, and suggested that the arbitrator decide the question of arbitrability before addressing the underlying dispute.  The arbitrator agreed, and after holding hearings on August 25 and September 5, 2000, rendered a decision, dated January 23, 2001, in favor of appellee.

Appellant, contending that the arbitrator incorrectly decided the issue of arbitrability, filed a petition to vacate the arbitrator's decision in the Circuit Court for Montgomery County. The parties filed cross motions for summary judgment.  After a hearing on the motions, the court, by order dated December 5, 2001, granted appellee's motion, denied appellant's motion, confirmed the arbitrator's decision, and remanded the case to the arbitrator for resolution of the dispute.

---

**3.**  The nature of the emergency suspension hearing to which an officer is entitled under the LEOBR is in dispute between the parties.  That issue was raised in the recent case of *Moose v. Fraternal Order of Police, Montgomery County Lodge 35, Inc.,* 369 Md. 476, 800 A.2d 790 (2002). In that case, a complaint for declaratory judgment was filed, seeking a declaration of the requirements under the LEOBR relating to a hearing after an officer has been suspended with pay.  The Court of Appeals declined to decide the issue and dismissed the case because of appellant's failure to exhaust administrative remedies.

The issue was also raised in this Court by a motion to show cause under the LEOBR and a petition for judicial review of administrative action.  We declined to decide the issue on the ground that the case had become moot.  *Fraternal Order of Police, Montgomery County Lodge No. 35, Inc. v. Mehrling,* No. 6139, Sept. Term 1998 and No. 175 Sept. Term 1999 (Md.App. November 10, 1999).  The nature and extent of the requirements imposed by the LEOBR with respect to a hearing after a suspension with pay is not now before us.

## Questions Presented

The underlying issue between the parties relates to the method of forming an emergency suspension hearing board when a police officer is suspended with pay. In essence, the dispute is whether the board must consist of three members or may consist of a single member. The parties agree that the arbitrator did not decide that underlying issue, and it is not before us.

Appellant asserts that the issue before us is whether the arbitrator exceeded his powers in ruling that the underlying issue was arbitrable. Appellant contends that it is not arbitrable because the underlying issue was not within the scope of the CBA, and it could not legally be governed by grievance procedures laid out in the CBA because the statute preempts the field. As a result, appellant argues that the issue can only be determined through procedures established by the LEOBR, in this case, by filing with the court an application to show cause, pursuant to section 734. Md.Code, art. 27, § 734.

Appellant appears to read the arbitrator's decision as having determined both the scope of the CBA and the question of preemption and determined them adversely to appellant. Accordingly, appellant contends that the issue before us is one of jurisdiction of the arbitrator, subject to de novo review, and properly decided by a court before or after arbitration, or after partial but before full arbitration, such as in the case before us. Alternatively, appellant appears to argue that, even if the arbitrator did not determine the scope of the CBA or the question of preemption, this Court can now decide those issues because they relate to arbitrability.

Appellant, apparently concerned about appealability, also alludes to the final judgment rule and the collateral order doctrine and argues that (1) jurisdiction is separate from the merits, (2) a decision now will promote judicial economy, and (3) a later review would be meaningless.

## Appealability, Reviewability, and Standard of Review

■ Appellant appears to merge concepts of appealability and reviewability. We agree that the case is appealable. The

only claim filed in the circuit court was the petition to vacate the arbitrator's decision, and when the court resolved that claim, there were no open matters. Thus, the order dated December 5, 2001, when entered, constituted a final judgment.

The arbitrator did not render an award and did not resolve the dispute between the parties. The arbitrator rendered a preliminary decision. Nevertheless, the parties have not argued that an arbitrator has to render a final award before a petition to vacate a preliminary decision can be filed, and we are not aware of any authority compelling that conclusion.

While the parties argue the law relevant to the issue of arbitrability, we must be mindful of its procedural context. In the present case, there was no motion to compel arbitration, pursuant to section 3–207 of MUAA, nor was a motion filed to stay the arbitration, pursuant to section 3–208. A petition to vacate was filed, pursuant to section 3–224, following the arbitrator's preliminary decision. That section provides that a court shall vacate an arbitrator's award if, in pertinent part, the "arbitrators exceeded their powers," Md.Code, Cts. & Jud. Proc., § 3–224(b)(3), or there was no arbitration agreement. *Id.* § 3–224(b)(5).

With one exception,[4] the cases cited by appellant for the proposition that we can decide the issue of arbitrability, in the context in which it is presented, are not on point. The cases of *Holmes v. Coverall North America, Inc.*, 336 Md. 534, 649 A.2d 365 (1994); *NRT Mid–Atlantic, Inc. v. Innovative Properties, Inc.*, 144 Md.App. 263, 797 A.2d 824 (2002); *Mayor and City Council of Baltimore v. Baltimore City Fire Fighters*, 136 Md.App. 512, 766 A.2d 219 (2001); and *Society of American Foresters v. Renewable Natural Resources Foundation*, 114 Md.App. 224, 689 A.2d 662 (1997), do stand for the proposition that a court may determine certain threshold issues of arbitrability, but those cases involved efforts to compel or stay arbitration. The applicable sections of the

---

4. *See Messersmith, Inc. v. Barclay Townhouse Assocs.*, 313 Md. 652, 547 A.2d 1048 (1988), discussed *infra.*

MUAA, sections 3–207 and 3–208, expressly provide that a court, before compelling or staying arbitration, must first determine if there was an agreement to arbitrate the subject matter of the dispute. Md.Code., Cts. & Jud. Proc., §§ 3–207—3–208. "In determining the scope of an arbitration clause, the court must find 'reliable evidence from the language actually employed in the contract that the parties intended the disputed issue to be the subject of arbitration, the intent of the parties being the controlling factor.'" *NRT*, 144 Md.App. at 280, 797 A.2d 824 (citing *Joseph F. Trionfo & Sons v. Ernest B. LaRosa & Sons, Inc.*, 38 Md.App. 598, 605–06, 381 A.2d 727 (1978)). This determination involves first deciding whether an agreement is clear and unambiguous. If it is deemed clear, the court determines the question of whether a dispute is within the scope of an arbitration provision and may either compel or stay arbitration, depending on its interpretation. *Id.* If the agreement is declared to be ambiguous, the question of arbitrability is properly one for the arbitrator, subject to court review. *Id.* at 279–81, 797 A.2d 824. Further, in *Mayor and City Council of Baltimore*, we indicated that a determination of arbitrability by a court in the first instance may extend to, *inter alia*, whether a statute preempts regulation by bargaining. 136 Md.App. at 528, 766 A.2d 219.

The request before us is not one to compel or stay arbitration but, rather, a request to vacate the arbitrator's award. We are governed by the provisions contained in section 3–224 of the MUAA. In order to apply subsection (b)(3) and determine whether the arbitrator exceeded his powers, we must first examine the action taken by the arbitrator.

In his opinion, the arbitrator summarized the background facts, set forth the respective position of each party, quoted "relevant statutory and contractual provisions," including portions of the LEOBR, and then engaged in "analysis." We summarize the "analysis" portion of the opinion as follows.

Section 8 of the CBA defines a grievance as a dispute as to the interpretation or application of the agreement. The same

section expressly recognizes that the arbitrator has authority to consider applicable public law when determining the propriety of an award. In referencing the LEOBR, the opinion stated:

It may well be that the preemptive nature of the LEOBR requires a conclusion, in considering the merits of this case, that the County's action did not violate the Labor Agreement. But the necessity of considering the impact of external law on the terms of the Labor Agreement do[es] not divest the arbitrator of jurisdiction.

(footnote omitted). In concluding, the opinion stated, "[s]ummarizing, then, the finding here is that the Collective Bargaining Agreement requires the arbitrator to consider grievances involving the interpretation and application of the Collective Bargaining Agreement. It is precisely such a dispute that is presented here."

Our reading of the arbitrator's opinion is that the arbitrator did not decide the question of preemption and probably did not decide the question of whether, as a matter of contract interpretation, the dispute was within the scope of the collective bargaining agreement. In other words, it appears that the arbitrator only decided that he had jurisdiction to interpret the agreement and decide the preemption issue. If we stopped our analysis at this point, we could not conclude that the arbitrator exceeded his powers because the parties conceded below that the arbitrator had authority to decide those issues.

Subsection (5) of section 3–224 provides that a court shall vacate an award if there was no arbitration agreement, the issue was not previously adversely determined on a motion to stay arbitration, and the party raised an objection at the arbitration proceeding. Md.Code, Cts. & Jud. Proc., § 3–224. The latter two elements were met in this case. We, therefore, address the first element, which in this case encompasses the question of preemption. *See Messersmith, Inc. v. Barclay Townhouse Associates*, 313 Md. 652, 547 A.2d 1048 (1988).

In *Messersmith*, the Court dealt with a petition to vacate an arbitrator's award filed under section 3–224 of the MUAA on the ground that the parties never agreed to arbitrate, and thus the arbitrator lacked jurisdiction to decide the dispute. The Court of Appeals stated that a party may refuse to participate in arbitration on the ground of lack of agreement and move for a stay under section 3–208, or participate, object, and move to vacate the arbitrator's award. 313 Md. at 662, 547 A.2d 1048. In either case, the *Messersmith* Court clearly explained that a reviewing court engages in a de novo review, including an independent assessment of the evidence. *Id.* at 664, 547 A.2d 1048; *see also Snyder v. Berliner Constr. Co.*, 79 Md.App. 29, 38, 555 A.2d 523 (1989).

The cases relied on by appellee for the proposition that the standard of review is a deferential one do not support that proposition. In *Gold Coast Mall v. Larmar Corporation*, 298 Md. 96, 468 A.2d 91 (1983), the Court of Appeals did not address the standard of review. In *Holmes v. Coverall North America, Inc.*, 336 Md. 534, 649 A.2d 365 (1994), the Court held that a claim for rescission of an agreement to arbitrate was a question for the arbitrator. We distinguished that question from the threshold issue of whether there was an agreement to arbitrate the subject matter of the dispute, the question before us.

█ Accordingly, we conduct a de novo review in determining whether the parties' dispute is arbitrable.

### Preemption and Scope of Collective Bargaining Agreement

The LEOBR was enacted in 1974. It provides the exclusive remedy governing the rights of police officers in disciplinary proceedings. *See* Md.Code Ann., art. 27, § 734B ("[T]he provisions of this subtitle shall supersede any State, county or municipal law, ordinance, or regulation that conflicts with the provisions of this Subtitle, and any local legislation shall be preempted by the subject and material of this subtitle."); *Moats v. City of Hagerstown*, 324 Md. 519, 526, 597 A.2d 972

(1991) ("The language and history of the Law Enforcement Officers' Bill of Rights demonstrates an intent to establish an exclusive procedural remedy for a police officer in departmental disciplinary matters."); *Coleman v. Anne Arundel Police Department*, 369 Md. 108, 797 A.2d 770 (2002) (explaining that the LEOBR establishes a uniform system of police discipline throughout the state).

In 1989, the LEOBR was amended to permit a negotiated alternate method of forming a hearing board. Section 727(d)(2) provides in pertinent part:

(i) The provisions of this paragraph may not be the subject of binding arbitration.

(ii) An agency or an agency's superior governmental authority that has recognized and certified an exclusive collective bargaining representative may negotiate with the exclusive collective bargaining representative an alternate method of forming a hearing board.

Md.Code Ann., art. 27, § 727(d)(2) (alteration in original). Appellee argues that subsection (i) should be read as prohibiting only interest arbitration, *i.e.*, impasses in collective bargaining, as distinguished from grievance arbitration. Appellee also argues that the mere fact that the LEOBR preempts the subject matter does not necessarily prevent local governments from implementing and supplementing it. See *Coleman*, 369 Md. 108, 797 A.2d 770 (2002); *Holiday Point Marina Partners v. Anne Arundel County*, 349 Md. 190, 707 A.2d 829 (1998); *Stuples v. Baltimore City Police Dept.*, 119 Md.App. 221, 704 A.2d 518 (1998).

■ We recognize the validity of appellee's point that preemption does not necessarily prohibit all local non-conflicting implementation and supplementation, but that is not the situation before us. We must first determine whether the LEOBR permits arbitration of the parties' dispute. It is well settled that, when construing a statute to determine the legislative intent, we look first to the statutory text. *Huffman v. State*, 356 Md. 622, 628, 741 A.2d 1088 (1999); *Fairbanks v. McCarter*, 330 Md. 39, 46, 622 A.2d 121 (1993). We give the words of

a statute their ordinary meaning. *Lewis v. State,* 348 Md. 648, 653, 705 A.2d 1128 (1998); *Comptroller of the Treasury v. Fairchild Indus.,* 303 Md. 280, 284, 493 A.2d 341 (1985). Where the text is unambiguous, we generally look no further than the statute in determining legislative intent. *State v. Montgomery,* 334 Md. 20, 24, 637 A.2d 1193 (1994); *State Dep't of Assessments and Taxation v. Glick,* 47 Md.App. 150, 157, 422 A.2d 34 (1980). In the present case, the plain meaning of the LEOBR, consistent with its objectives, is that the parties may negotiate an alternate method of forming a hearing board but may not utilize arbitration as a remedy to resolve a dispute concerning that subject matter.

In light of our interpretation of the statute, the scope of the CBA is clear and unambiguous. Article 45 of the agreement recognizes that any personnel action required to be processed, pursuant to the procedures set forth in the LEOBR, is not subject to grievance and arbitration under the agreement.

The sole methodology for resolving the dispute between the parties, therefore, is that set forth in the LEOBR. Having satisfied the final element of subsection (5) of section 3–224, the arbitrator's decision should be vacated.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH INSTRUCTIONS TO VACATE THE ARBITRATOR'S DECISION. COSTS TO BE PAID BY APPELLEE.**