914 A.2d 199

**PRINCE GEORGE'S COUNTY, Maryland**

v.

**FRATERNAL ORDER OF POLICE, PRINCE GEORGE'S COUNTY, LODGE 89.**

**No. 02660, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Jan. 4, 2007.

296

Robert J. Mellin, Upper Marlboro, for appellant.

Jeremiah A. Collins (Bruce R. Lerner, Jeffrey L. Gibbs, on brief), Washington, DC, for appellee.

Panel KENNEY, MEREDITH and WOODWARD, JJ.

MEREDITH, J.

This appeal arises from an arbitration award entered pursuant to the collective bargaining agreement between appellant, Prince George's County, and appellee, the Fraternal Order of Police, Prince George's County, Lodge 89 ("FOP 89"). After the Chief of Police of Prince George's County issued a memorandum announcing that he would make decisions regarding promotions in the police department using a "Rule of 3" (that is, the chief would choose from the top three ranked candidates, rather than promote the top-ranked candidate as his predecessors had done), FOP 89 filed a grievance under the terms of the collective bargaining agreement. The grievance was denied and the matter proceeded to arbitration, despite the County's assertion that the matter was not subject to mandatory arbitration. The arbitrator found that appellant had violated the collective bargaining agreement by instituting the "Rule of 3," and ordered that promotions of eligible police officers be made on the basis of rank alone. The County appealed to the Circuit Court for Prince George's County, which affirmed the arbitrator's decision.

Appellant presents three questions for our review. As set forth in appellant's brief, those questions are:

(1) Did the arbitrator exceed his authority in determining the grievance to be arbitrable?

(2) Did the arbitration award contain a palpable mistake of law or fact?

(3) Did the arbitration award contain a mistake so gross as to work a manifest injustice?

We answer all three of these questions in the negative. We conclude, however, that this appeal must be dismissed on the ground of mootness. Although moot, this appeal presents issues important to the public interest and worthy of a discussion of the merits, for the purpose of guidance in future litigation which is likely to arise on the same issues.

### Facts and Procedural History

On April 21, 2004, Melvin High, the Chief of Police for Prince George's County, issued a memorandum titled "Selection Criteria for Promotions, Beginning with the April 25, 2004 Promotional Examination." The memorandum, distributed to all sworn personnel of the police department, detailed changes regarding the method of granting promotions. Specifically, the memorandum explained that the Chief would begin making promotion decisions using a "Rule of 3." In contrast with the long-standing policy of promoting officers eligible for promotion on the basis of ranking alone, under the "Rule of 3," the Chief would consider a number of variables in deciding which of the three top-ranked candidates on the eligibility list to promote. The memorandum listed twenty-three factors that could be considered by the Chief, including past job performance, commendations, the complexity of the officer's past assignments, disciplinary actions or conduct unbecoming an officer, education, and the needs of the department. The Chief explained the "Rule of 3" as follows:

Pursuant to the "Rule of 3," the promotion eligibility list will continue to be established by a combination of scores on the written examination and the Assessment Center. The writ-

ten examination and Assessment Center results will continue to be assigned numbers, which will be ordered, in number rank, to create an eligibility list. The test scores will be listed, in descending order, in accordance with Sec. 16–162(d) ("Order of Names on Promotional Register"). The three candidates scoring the highest test scores on the promotional examination will qualify for further consideration for promotion. The top three candidates will be evaluated, considering his or her actual work performance, contributions to the department and the Prince George's County community.

\* \* \*

The "Rule of 3" will not change any portion of the written examination or the Assessment Center examination. Officers should not change their plans for taking the examination or modify their preparation for the examination as a result of the "Rule of 3." Preparation for promotion, under the "Rule of 3," includes performing well on the promotional examination, as well as providing your best service to the community during your career as a police officer. This should be the goal and practice of every officer on this department.

On April 26, 2004, FOP 89 filed a grievance, claiming that the "Rule of 3" violated the collective bargaining agreement between appellant and FOP 89. Specifically, FOP 89 cited Article 4, § 4.04 of the collective bargaining agreement, which reads, in relevant part:

Acting Pay Pending Promotions: All vacancies caused by permanent departure from the Department—retirement, discharge, or promotion—will be filled within ninety (90) days of the vacancy or within ninety (90) days of the establishment of an eligibility list, whichever occurs later, or the first person on the eligibility list (or subsequent persons depending on the number of vacancies) will be paid as if he, she or they had been promoted from the ninety-first (91st) day on. If the eligibility list is not established until more than ninety (90) days after the vacancy, then all vacancies

will be filled (or the appropriate person(s) on the eligibility list will be paid acting pay) upon establishment of the eligibility list. The Department has the authority to eliminate the position during the ninety (90) day period; but if the position is restored, the first person on the promotion list (or subsequent persons depending on the number of vacancies) will be paid as if he, she or they had been promoted from the ninety-first (91st) day on. Upon the establishment of an eligibility list, the County will provide to the FOP a list of the names of officers, in order of finish but without scores, on each final eligibility list.

The Department and FOP 89 agree to continue the past practice governing the relationship between the disciplinary process and promotional process. An otherwise eligible candidate for promotion who is under investigation that could lead to serious disciplinary action (defined as discharge from employment[,] suspension from employment without pay or benefits, or demotion in rank) shall have his or her promotion held in abeyance pending the final outcome of the investigation and the imposition of any serious disciplinary action. During that period, the next candidate on the eligibility list will be offered the acting position as a temporary position and will be entitled to acting pay under Section 4.04. If this candidate refuses the transfer to acting position, the Department will not be required to offer the acting position to the next candidate on the eligibility list and contractual obligations will be satisfied so long as another officer is given the acting position and acting pay. Once the final outcome of the investigation and disciplinary action is known and the first candidate is deemed qualified for promotion, he or she will be promoted retroactive to the date that he or she would otherwise have been entitled to the promotion had an investigation had [sic] not been commenced or continued. The promoted candidate will assume the vacancy and the next candidate, who temporarily assumed the vacancy in an acting role, will be returned to his or her previously held position, if at all feasible, or to the most similarly situated position available in the Department.

On July 23, 2004, FOP 89 presented its grievance at a hearing before the Labor Commissioner. The Labor Commissioner denied the grievance, and FOP 89 subsequently filed a request for arbitration pursuant to Article 20, § 20.05(B) of the collective bargaining agreement, which provides: "Grievances arising as a result of disputes concerning the meaning, interpretation or application of this Agreement ... or of a claimed violation, misinterpretation or misapplication of the rules or regulations issued by the police department affecting the terms and conditions of employment, shall be subject to ... arbitration."

An arbitration hearing was held on November 23, 2004. There exists no transcript of the arbitration hearing. On March 14, 2005, the arbitrator issued an opinion and award in favor of FOP 89. The award read:

After carefully considering the evidence presented and all of the arguments raised in the post-hearing briefs, I find that:

1. The Employer violated the Collective Bargaining Agreement by adopting a "Rule of 3" under which the Chief of Police may cho[o]se to promote a candidate ranked lower on the promotion eligibility list over a candidate who is ranked higher;

2. Promotions shall be in order of ranking on the eligibility list;

3. If prior to the date of this Opinion and Award, promotions were made of employees that were not in rank order on the eligibility list, then those employees who ranked at the top of the eligibility list shall be promoted retroactive to the date of the out-of-order promotions and they shall be made whole, including back pay.

4. The grievance is sustained.

On April 13, 2005, appellant filed a petition to vacate the arbitration award in the Circuit Court for Prince George's County. After a hearing, the circuit court entered an order and opinion affirming the decision of the arbitrator. Appellant filed a timely notice of appeal.

## I. Mootness

Although not raised by either party, we must initially address the potential mootness of the issues raised in this case. At oral argument, after counsel for appellant indicated that the collective bargaining agreement at issue had expired in 2005, this Court inquired of counsel whether the case was now moot, on the ground that no live controversy exists. The Court of Appeals has explained: "Generally, appellate courts do not decide academic or moot questions. A question is moot if, at the time it is before the Court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." *Attorney Gen. v. Anne Arundel Co. School Bus Contractors Assn., Inc.*, 286 Md. 324, 327, 407 A.2d 749 (1979). The Court of Appeals has recently made clear that, when moot questions are raised on appeal, this Court should dismiss the appeal on the ground of mootness. *Cottman v. State*, 395 Md. 729, 912 A.2d 620 (2006), slip. op. at 14.

There are, however, exceptions to the general rule that appellate courts will not decide moot questions. In *Cottman,* the Court of Appeals recognized that "[t]here is a public benefit derived from published opinions, which is the reason appellate courts are sometimes willing to decide moot questions where it appears that there are important issues of public interest raised which merit an expression of our views for the guidance of courts and litigants in the future." *Id.* at 15 (Internal quotes and citations omitted.) This Court may reach the merits of a moot question "where the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest...." *Albert S. v. Dept. of Health,* 166 Md.App. 726, 744, 891 A.2d 402 (2006) (quoting *Lloyd v. Bd. of Supervisors of Elections,* 206 Md. 36, 43, 111 A.2d 379 (1954)). In *Lloyd,* the Court of Appeals listed the circumstances under which Maryland appellate courts may decide moot issues:

[I]f the public interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to

recur frequently, and its recurrence will involve a relationship between the government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then the Court may find justification for deciding the issues raised by a question which has become moot, particularly if all of these factors concur with sufficient weight.

206 Md. at 43, 111 A.2d 379.

At oral argument, counsel for both parties indicated that the collective bargaining agreements between the County and FOP 89 are renegotiated every two years. In the course of the most recent renegotiation, FOP 89 attempted to have Article 4, § 4.04 clarified as setting forth a "Rule of 1" for the purposes of deciding which officers receive promotions. The County would not agree to this term, and the language of § 4.04 in the new agreement remains unchanged from the time FOP 89 filed the grievance underlying this appeal. The impasse with regard to the interpretation and implications of § 4.04, and whether a "Rule of 3" is permissible, is likely to continue. Furthermore, because of the frequency with which the County and FOP 89 renegotiate their collective bargaining agreement, a similar dispute in the future would also likely evade appellate review on the ground of mootness, because the agreement at issue would likely have expired by the time the case reached this Court. Finally, this case involves the relationship between a county government and its employees, and as such, is an important matter of public concern. Because "all these factors concur with sufficient weight," we "find justification for deciding the issues raised." *Id.*

## II. Arbitrability of the Dispute

As a threshold matter, appellant contends that the arbitrator exceeded his authority by finding the dispute to be arbitrable under Article 20, § 20.05(B) of the collective bargaining agreement. Appellant argues that the dispute caused by the institution of the "Rule of 3" does not qualify as a grievance "arising as a result of disputes concerning the meaning, inter-

pretation or application of this [collective bargaining] Agreement." In response, FOP 89 argues that the fact that the phrase "Rule of 1" is not specifically included in the provisions of the collective bargaining agreement that address promotional procedures does not mean that the dispute does not concern the interpretation of the collective bargaining agreement. We agree that FOP 89's assertion that the "Rule of 3" is in violation of the collective bargaining agreement raises an arbitrable controversy because there is a "dispute[ ] concerning the meaning, interpretation or application of [the collective bargaining] Agreement."

 Arbitration is "a matter of contract." *Gold Coast Mall, Inc. v. Larmar Corporation*, 298 Md. 96, 103, 468 A.2d 91 (1983) (citations omitted). If there is no agreement to submit to arbitration, courts cannot compel parties to do so. *Id.* When an arbitration award is "attacked for lack of jurisdiction" on the ground that the parties did not agree to arbitrate the issue at hand, we must review *de novo* the arbitrator's decision as to arbitrability. *Stephen L. Messersmith, Inc. v. Barclay Townhouse Associates*, 313 Md. 652, 664, 547 A.2d 1048 (1988). Such review includes an "independent assessment of the evidence." *Montgomery County v. FOP*, 147 Md.App. 659, 669, 810 A.2d 519 (2002).

Here, there is no dispute that an arbitration agreement existed between the parties. The dispute arises from whether that arbitration agreement encompasses the particular issue underlying FOP 89's grievance. Appellant argued before the arbitrator, and maintains on appeal, that the arbitrator never had jurisdiction to hear FOP 89's grievance, because the alleged "Rule of 1" was not a matter of interpretation of the collective bargaining agreement and therefore fell outside the scope of the arbitration clause.

 When considering whether a dispute falls within the scope of an arbitration clause, a court must find "reliable evidence from the language actually employed in the contract that the parties intended the disputed issue to be the subject of arbitration, the intent of the parties being the controlling

factor." *Id. at* 667, 810 A.2d 519 (quoting *NRT Mid–Atlantic, Inc. v. Innovative Properties, Inc.,* 144 Md.App. 263, 280, 797 A.2d 824 (2002)) (citations omitted). In reviewing the arbitration clause, however, we must remain mindful that "the Supreme Court has made it clear that arbitration is a favored remedy, and in reviewing any arbitration clause a court is to order arbitration unless 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Mayor v. Baltimore Fire Fighters,* 93 Md.App. 604, 610, 613 A.2d 1023 (1992) (quoting *AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).

In *Gold Coast Mall, supra,* in the context of a motion to compel arbitration, the Court of Appeals articulated the role of Maryland courts in determining whether an arbitration clause grants an arbitrator initial jurisdiction over the issue of arbitrability. Like the parties in this case, the parties in *Gold Coast Mall* had a contract that contained an arbitration clause. 298 Md. at 100, 468 A.2d 91. The arbitration clause provided that "disputes arising under the agreement be submitted to arbitration," but did not specify which party bore the responsibility of initiating arbitration. *Id.* Rather than submitting the eventual dispute to arbitration, the plaintiff went directly to the circuit court and filed a suit for declaratory judgment. *Id.* In response, the defendant filed a petition to compel arbitration. *Id.* In holding that the arbitrator should initially have had jurisdiction to determine whether the dispute was arbitrable, and that the circuit court should have compelled arbitration, the Court of Appeals explained:

Where the language of the arbitration clause is clear, and it is plain that the dispute sought to be arbitrated falls within the scope of the arbitration clause, arbitration should be compelled. If it is apparent, on the other hand, that the issue sought to be arbitrated lies beyond the scope of the arbitration clause, the opposing party should not be compelled to arbitration, since there is no agreement to arbitrate. Where there is a broad arbitration clause, calling for

the arbitration of any and all disputes arising out of the contract, all issues are arbitrable unless expressly and specifically excluded. A problem is created for the court when the language of the arbitration clause is unclear as to whether the subject matter of the dispute falls within the scope of the arbitration agreement. Courts that have considered this problem have recognized that under such circumstances the question of substantive arbitrability initially should be left to the decision of the arbitrator, not the courts.

298 Md. at 104–05, 468 A.2d 91 (citations omitted). Under this paradigm, appellant's contention that the arbitrator lacked jurisdiction must fail.

■ We find the arbitration clause contained in Article 20, § 20.05(B) of the collective bargaining agreement to be quite clear. It requires arbitration for all disagreements "arising as a result of disputes concerning the meaning, interpretation or application of this Agreement." The present dispute arose, in part at least, from appellant's interpretation of Article 4, § 4.04 of the collective bargaining agreement as requiring the Department to provide acting pay to the individual at the top of the eligibility list, but not requiring the Department to actually promote the individual at the top of the eligibility list. Similarly, FOP 89's contention that the collective bargaining agreement precluded adoption of a "Rule of 3" was a dispute concerning the application of the agreement, and therefore, within the scope of the arbitration clause.

The current police chief's interpretation of the collective bargaining agreement clearly differs from the interpretations of prior police chiefs. At the arbitration hearing, a former chief of police testified that he had, on occasion, wanted to promote an officer not at the top of the eligibility list, but understood that the collective bargaining agreement prohibited him from doing so until he first promoted those candidates ranked higher on the eligibility list. According to other testimony at the arbitration hearing, for at least twenty years,

no candidate for promotion had been promoted out of rank order.

Appellant argues that, because the language of § 4.04 does not explicitly require a "Rule of 1," this Court cannot infer from the language of Article 20, § 20.05(B) that the parties intended to submit to arbitration disputes regarding whether such a rule exists. The arbitration clause, however, does not provide for arbitration only concerning matters mentioned expressly within the four corners of the collective bargaining agreement. The arbitration clause applies to *all* disputes regarding the interpretation of the agreement. We reject appellant's construction of Article 20, § 20.05, under which arbitration would only be required when one of the parties violated an express provision of the collective bargaining agreement.

Appellant also argues that the dispute is not arbitrable because FOP 89's claim does not constitute a "grievance" within the meaning of the collective bargaining agreement. Article 20, § 20.01 of the agreement defines "grievance" as "a dispute concerning the application or interpretation of the terms of this Agreement or a claimed violation, misinterpretation or misapplication of the rules or regulations of the County affecting the terms and conditions of employment." Reviewing a nearly identical definition of "grievance" in *Baltimore Fire Fighters, supra,* 93 Md.App. at 609–10, 613 A.2d 1023, we concluded that the definition of "grievance" included the union's complaint against the city for reducing the number of firefighters assigned to each truck.[1] We said:

> It may be, as the City asserts, that the "benefit claimed" by the Unions, *i.e.,* the right to continuance of four-member engine companies, is "specified nowhere in" the [memoran-

---

1. In *Baltimore Fire Fighters,* the memorandum of understanding between the firefighters' union and the city defined "grievance" as "(1) a dispute concerning the application or interpretation of the terms of a memorandum of understanding, [or] (2) a claimed violation, misinterpretation or misapplication of the rules or regulations of a municipal agency or the employer affecting the terms and conditions of employment." 93 Md.App. at 609–10, 613 A.2d 1023.

dum of understanding]. That, however, does not mean a dispute as to that benefit is not a "grievance." Rather, the dispute is a grievance if it cannot be said with "positive assurance" that it does not "concern" the "application or interpretation of the terms" of the [memorandum of understanding].

*Id.* at 612, 613 A.2d 1023 (quoting *AT & T Technologies, supra,* 475 U.S. at 650, 106 S.Ct. 1415). Likewise, in this case, the right to a "Rule of 1" may not be spelled out in the collective bargaining agreement, but, at the time the grievance was initiated, it could not be said with positive assurance that the adoption of the chief's new promotion policy does not concern the application or interpretation of the collective bargaining agreement.

Because the language of the arbitration clause clearly mandates arbitration for disputes arising from the interpretation of the collective bargaining agreement, and the dispute regarding the "Rule of 3" arose from conflicting interpretations of § 4.04 of the collective bargaining agreement, we conclude that the arbitrator correctly determined that he had jurisdiction to arbitrate this dispute. We shall therefore address appellant's alternative arguments for reversal, namely, that the arbitration award should be vacated on the grounds that the award "contains a palpable mistake of law" and "constitutes a mistake of law so gross as to work a manifest injustice."

### III. The Arbitration Award

Maryland courts may vacate an arbitration award under only certain, very narrow, circumstances. *Graceman v. Goldstein,* 93 Md.App. 658, 666, 613 A.2d 1049 (1992). When an arbitration agreement falls within the ambit of the Maryland Uniform Arbitration Act, the circumstances for vacating an arbitration award are set forth in Md.Code, Cts. & Jud. Pro. ("C.J.P.") § 3–224(b) (1989). Under C.J.P. § 3–206(b), however, unless the parties to an employment agreement specifically provide that the Maryland Uniform Arbitration Act shall apply, common law rules of interpretation govern the

arbitration agreement. *Bd. of Educ. of Prince George's County v. Prince George's Co. Educators' Ass'n., Inc.,* 309 Md. 85, 96–98, 522 A.2d 931 (1987).[2] The parties in this case did not specify in the arbitration agreement that the Maryland Uniform Arbitration Act should apply. Therefore, the agreement is subject to common law rules of interpretation. *Id.*

In *Bd. of Educ., id.* at 98, 522 A.2d 931, the Court of Appeals reviewed the history of arbitration and stated that courts at common law "generally deferred to the arbitrator's findings of fact and applications of law." While noting that "it was firmly established as a common law principle in Maryland that mere errors of law or fact would not ordinarily furnish grounds for a court to vacate or to refuse enforcement of an arbitration award," the Court of Appeals nevertheless acknowledged that an arbitration award could be vacated under certain circumstances. *Id.* at 100, 522 A.2d 931. The Court of Appeals set forth the circumstances under which a court may vacate an arbitration award under the common law, explaining:

> Like many other general principles, however, the rule that arbitration awards will not be vacated for errors of law or fact has several exceptions. Thus an award will be vacated for fraud or for misconduct, bias, prejudice, corruption or lack of good faith on the part of the arbitrator. Moreover, a mistake by an arbitrator may be "so gross as to evidence misconduct or fraud on his part." ... In addition, an arbitration award which is contrary to a clear public policy will not be enforced.
>
> A court will vacate an arbitration award if it is not within the scope of the issues submitted to arbitration. An award is also reviewable to determine whether the arbitrator failed to consider all matters submitted. Furthermore, "a court may modify an arbitration award for a mistake of form such

---

**2.** C.J.P. § 3–206(b) provides: "This subtitle does not apply to an arbitration agreement between employers and employees or between their respective representatives unless it is expressly provided in the agreement that this subtitle shall apply."

as an evident miscalculation of figures." And a court will determine whether the parties had a procedurally fair hearing leading to the award.

The above-mentioned exceptions to the general rule concerning the finality of arbitration awards are relatively clear-cut. There is, however, an additional limited area of review which is not as clearly defined. This Court has said that "[t]he favor which the courts accord to awards of arbitrators is however predicated upon the assumption . . . that the award . . . involves no mistake so gross as to work manifest injustice." The Court has also stated that an arbitration award will be set aside for "a mistake of law or fact . . . *appearing on its face."* . . . "[A] palpable mistake in law or fact, is good cause to set aside an award, *if it is apparent on the face of the award."*

*Id.* at 100–101, 522 A.2d 931 (internal citations omitted) (emphasis added).

In *MCR v. Greene,* 148 Md.App. 91, 105–06, 811 A.2d 331 (2002), this Court reaffirmed the validity of the standard of review of arbitration awards articulated by this Court in *O–S Corp. v. Samuel A. Kroll, Inc.* 29 Md.App. 406, 408–09, 348 A.2d 870 (1975), *cert. denied,* 277 Md. 740 (1976): "when reviewing the fruits of an arbitrator's award, a judge may withhold only such as were tainted by improbity *or* based on a completely irrational interpretation of the contract." *Id.* at 408–09, 348 A.2d 870. Although this Court in *MCR* acknowledged that the "completely irrational" standard has never been approved by the Court of Appeals, we stated that "the Court [of Appeals] has never rejected that standard. Until it does, we shall assume its continued vitality in Maryland." *MCR, supra,* at 106, n. 8, 811 A.2d 331 (citing *Snyder v. Berliner Construction Co., Inc.,* 79 Md.App. 29, 37, 555 A.2d 523 (1989))(stating that courts should apply the "completely irrational standard" when reviewing an arbitrator's construction of the parties' "substantive contractual provisions").

Appellant contends that the arbitration award in this case involved a "mistake so gross as to work a manifest

injustice," and contained a "palpable mistake of law or fact." We find nothing apparent on the face of the award to support that contention or to support a conclusion that the arbitrator's decision was completely irrational.

The arbitrator found that Article 4, § 4.04 "is premised on a rule of one." The arbitrator based this conclusion on the language of § 4.04 and credible evidence regarding the past practices of the Department in promoting police officers. The arbitrator explained his rationale as follows:

> Pursuant to [§ 4.04], if a permanent vacancy is not filled within 90 days ..., then the first person on the eligibility list must be paid as if that person had been promoted on the 91st day. Thus, the right to payment pending promotion set forth in Section 4.04 goes to the "first person on the eligibility list." The clear implication of that language is that the parties contemplated that such "first person" would be the one who would fill the vacancy, absent any of the disciplinary situations described later in Section 4.04. Even if the vacant position is "eliminate[d]" during the 90 days following the creation of the vacancy but the position [is] later "restored," Section 4.04 provides that the "first person" on the promotional list will be paid as though that person had been promoted on the 91st day. This fact further demonstrates that the parties anticipated that the first person on the eligibility list would fill the vacancy.

Such reasoning was not "completely irrational."

The arbitrator also placed emphasis on the provisions of § 4.04 which require, when the "first person" on the eligibility list is involved in disciplinary sanctions, that the next person on the eligibility list shall fill the available position in an acting capacity until the "first person" is "deemed qualified," at which point the "first person" is "entitled" to the promotion. The arbitrator construed the use of the words "deemed" and "entitled" to indicate that the parties intended that the candidates on the eligibility list be promoted in rank order. Words such as "entitled" do not imply discretion for the chief to

select which candidate should receive the promotion. Again, such reasoning was not "completely irrational."

▮ Appellant further argues that the discretion granted by statute to the County's appointing authorities overrides the collective bargaining agreement. Appellant cites Prince George's County Personnel Law ("P.L."), § 16–107, titled "Management Prerogatives," to support its contention that the chief of police has the prerogative to promote eligible candidates as he sees fit. The relevant portion of § 16–107 reads:

(a) Subject to such conditions and restrictions as are specifically set forth or authorized to be effectuated pursuant to the provisions of this Subtitle, all appointing authorities shall have the general responsibilities and authority to manage and direct the operations and activities of their departments, agencies, or offices to the fullest extent provided by applicable statute, law and/or regulation. In furtherance of the foregoing and under the management direction of the County Executive, all appointing authorities shall have exclusively reserved to them, the following general prerogatives relative to the management of the operations and activities of their departments, agencies or offices, *provided that said prerogatives are exercised in a manner consistent with the provisions of this Subtitle and any personnel procedures developed, approved and issued pursuant hereto:*

\*　　\*　　\*

(2) To direct and assign the work of their employees, including, but not limited to, the authority to appoint, *promote,* transfer, and reassign such employees; . . . (emphasis added)

Appellant buttresses its reliance on § 16–107(a)(2) by citing § 16–233(b), which provides that "the provisions of this Subtitle shall be presumed to be Countywide in nature and, as such shall not be subject to collective bargaining, except . . . with respect to negotiations on Countywide matters, and except for those provisions of this Subtitle authorized to be established under the County's Salary Plan." Appellant argues that, read

together, § 16–107(a)(2) and § 16–233(b) clearly provide that the chief of police has unfettered discretion in making promotions, because the managerial prerogatives listed in § 16–107(a) are not subject to collective bargaining. Appellant asserts that the arbitrator did not give due consideration to these provisions in making his decision, which constitutes a "mistake of law so gross as to work a manifest injustice."

Appellant, however, ignores the overriding impact of P.L. § 16–233(e), which reads:

> (e) All collective bargaining agreements shall be adopted and approved by legislative acts of the County Council referencing the collective bargaining agreement and date of execution by the county Executive. Upon adoption of the legislative act by the County Council, *any provision in the applicable agreement contrary to the provisions of this Subtitle shall have the effect of amending any such provision and enacting the provision into law applicable to that collective bargaining unit.* (emphasis added)

Collective bargaining agreements are enacted by the Prince George's County Council and have the effect of law. Under P.L. § 16–233(e), if a provision in a collective bargaining agreement conflicts with a provision in the personnel laws, then the collective bargaining agreement shall control. Appellant's argument, that any agreement regarding promotion practices is invalid because authority to promote is a managerial prerogative that cannot be bargained away, is fatally flawed. This argument, if accepted, would mean that the County could violate its own personnel laws by entering into collective bargaining agreements which include provisions relating to managerial prerogatives, and then violate the collective bargaining agreement with respect to those terms, because the terms are entirely unenforceable.

In § 16–233(e), the County Council clearly mandated that collective bargaining agreements supersede the general provisions of the county personnel laws. The section on which appellants rely, § 16–107(a)(2), provides that "appointing authorities" shall have the "authority to appoint," to the extent

*"consistent with the provisions of this Subtitle and any personnel procedures developed, approved and issued pursuant hereto."* (emphasis added). Appellant retains discretion to promote employees only so far as consistent with § 16–233(e), which gives controlling effect to the collective bargaining agreement.

Appellant's assertion that § 16–233(b) precludes collective bargaining regarding any managerial prerogatives stretches the language of § 16–233(b). On its face, § 16–233(b) says only, with respect to § 16–107(a)(2), that a collective bargaining agreement could not take the right to promote away from the appointing authority for the Police Department. It does not say that a collective bargaining agreement may not supply additional restrictions on the procedures which an appointing authority must follow in granting promotions. Furthermore, as FOP 89 argues, allowing the County to "cherry-pick" the provisions of a collective bargaining agreement with which it will comply would be "grossly unfair, and cannot be reconciled with the County Code provisions that give [collective bargaining agreements] a far more secure status."

Appellant also relies on our analysis of a proposed "Rule of 1" and the provisions regarding managerial prerogatives in Baltimore City's Municipal Employee Relations Ordinance ("MERO") in *Mayor & City Council of Baltimore v. Baltimore City Firefighters Local 734,* 136 Md.App. 512, 519, 766 A.2d 219 (2001).[3] Contrary to appellant's assertions, MERO is quite different from the Prince George's County personnel laws at issue in this case. In *Firefighters II,* after explaining that MERO reserves the right for city agencies to direct, hire, promote, transfer and assign employees, we also noted that, under MERO, "[a]ny memorandum of understanding reached

---

3. Earlier in this opinion, we cited another case involving the same parties: *Mayor and City Council of Baltimore v. Baltimore Fire Fighters, Local 734,* 93 Md.App. 604, 610, 613 A.2d 1023 (1992). The two cases are unrelated and were decided ten years apart. To distinguish between the two cases in their briefs, the parties referred to the 2001 case as *Firefighters II.* For clarity's sake, we shall adopt the same designation.

between the employer and employee organization *shall be subject to the provisions of the Charter or applicable ordinance* concerning salaries, hours of work, fringe benefits, pensions and other conditions of employment." *Id.* at 519, 766 A.2d 219 (emphasis added). That provision is the converse of § 16–233(e), which provides that county personnel laws are subordinate to the collective bargaining agreements approved by the County Council.

The City Charter in *Firefighters II* also·contained detailed provisions expressly mandating that promotions be made according to a "Rule of 5." *Id.* at 534–35, 766 A.2d 219. Rule 29, the relevant Baltimore City Charter provision, said:

> For one vacancy, the top score shall be the reference score and the Director shall therefore certify all eligibles who fall within the top five scores.
>
> * * *
>
> Upon receipt of a certification, the appointing officer shall invite at least five (5) certified eligibles . . . for an interview and shall indicate on the Department's form the name or names of those selected together with any other pertinent information concerning the availability or response by the eligibles.
>
> . . . The appointing officer may within sixty (60) days after certification, appoint one of the persons whose names have been certified.

*Id.* at 535, 766 A.2d 219 (emphasis omitted). Before remanding *Firefighters II* for further proceedings on the ground that the record was too sparse to reach a decision on the arbitrability of the "Rule of 1," this Court noted that "[t]he rule of one appears to be inconsistent, however, with the selection process of Rule 29 in that the former does not give the appointing authority the opportunity to evaluate a candidate and exercise its discretion based on conduct in office and an interview, as well as test scores." *Id.* at 535, 766 A.2d 219. No comparable rule provides such discretion to appointing authorities in Prince George's County. Appellant's reliance on *Firefighters II* is misplaced.

The arbitrator's analysis of the language in § 4.04 of the collective bargaining agreement was not "completely irrational." Nor does the arbitrator's decision regarding the effect of § 16–233(e) of the county personnel laws contain a "palpable mistake of law" or constitute a "mistake so gross as to work a manifest injustice." The circuit court correctly upheld the arbitrator's decision, and were the question not moot, we would affirm the decision of the circuit court.

**APPEAL DISMISSED ON THE GROUND OF MOOTNESS.**

**COSTS TO BE PAID BY APPELLANT.**