50 A.3d 579

## MONTGOMERY COUNTY, MARYLAND

v.

## FRATERNAL ORDER OF POLICE, MONTGOMERY COUNTY LODGE 35, INC.

No. 105, Sept. Term, 2011.

Court of Appeals of Maryland.

Aug. 20, 2012.

562

Edward B. Lattner, Chief, Division of Human Resources & Appeals (Marc P. Hansen, Co. Atty., Rockville, MD), on brief, for Appellant.

Abigail V. Carter (Jeffrey L. Gibbs and Kimberly M. Sanchez Ocasio, Bredhoff & Kaiser, P.L.L.C., Washington, D.C.), on brief, for Appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

GREENE, J.

The Fraternal Order of Police, Montgomery County Lodge 35, Inc. ("FOP" or "Appellee") filed a grievance under the "Maintenance of Standards" provision of its collective bargaining agreement ("CBA" or "Agreement") with Montgomery County ("County" or "Appellant") following the County's unilateral decision to discontinue a long-standing practice of allowing shop stewards to sit in on disciplinary interrogations for training purposes. The County filed a motion to dismiss the grievance, arguing that arbitration of the issue was preempted by the Law Enforcement Officers' Bill of Rights, Maryland Code (2003, 2011 Repl.Vol.), §§ 3–101–113 of the Public Safety Article ("LEOBR").[1] The arbitrator determined that the grievance was not preempted and denied the motion to dismiss. The County then filed a petition to vacate the "arbitration award" in the Circuit Court for Montgomery County. The Circuit Court affirmed the arbitrator's decision and granted summary judgment on behalf of the FOP. We affirm the judgment of the Circuit Court that the LEOBR is not implicated by the steward training grievance and, therefore, does not preempt its arbitration under the CBA.

---

1. Except where otherwise specified, all statutory citation in this opinion is to the LEOBR.

## I.

On August 11, 2009, the FOP[2] filed a grievance with an arbitrator pursuant to its CBA with the County, alleging that the County violated the Agreement when it unilaterally terminated a 20–year old practice of allowing shop stewards in-training to attend disciplinary interrogations conducted by the Police Department's Internal Affairs Division.[3] The CBA provides for dispute resolution, including the arbitration of grievances, and defines a grievance as "a dispute or disagreement as to the interpretation or application of the terms and conditions of [the] Agreement." While the Agreement does not expressly mention the training of shop stewards, the FOP argued that the previous policy amounted to a "past practice" and was thereby incorporated into the Agreement and preserved under the "Maintenance of Standards/Retention of Benefits and Conditions" provision. The County filed a motion to dismiss the grievance, arguing that the LEOBR governs the presence of individuals during an interrogation and that, save for two exceptions,[4] the statute preempts collective

2. The FOP is the exclusive certified bargaining unit representative for Montgomery County police officers below the rank of lieutenant. *See* Montgomery County Code § 33–65.

3. According to the FOP, the shop stewards-in-training did not participate in the interrogation, but instead, attended the interrogations in order to observe experienced shop stewards represent law enforcement officers in order to become effective representatives in future interrogations. The experienced shop stewards acted as the interrogated officer's sole representative pursuant to § 3–104(j)(1)(i) of the Public Safety Article ("On request, the law enforcement officer under interrogation has the right to be represented by counsel or another responsible representative of the law enforcement officer's choice who shall be present and available for consultation at all times during the interrogation."). The County disagrees and suggests that its decision to terminate the practice stemmed from the fact that "the FOP was permitting veteran shop stewards to 'tag team' the interrogators" with stewards-in-training. Of course, the correct characterization of what was happening during these proceedings implicates the merits of the dispute, which we do not address.

4. There are two instances where collective bargaining is expressly permitted under the LEOBR. *See* § 3–107(c)(4) (alternate method of forming a hearing board) and § 3–108(c)(1) (finality of the hearing board's decision) of the Public Safety Article.

bargaining and arbitration on matters relating to the "subject and material" of the LEOBR. *See* § 3–102(b) of the Public Safety Article. The County argued that the proper procedure for asserting the denial of an officer's rights under the LEOBR was an application for a show cause order in the circuit court. *See* § 3–105 of the Public Safety Article. The FOP filed in opposition and argued that the grievance had "nothing to do with the LEOBR" because the issue involved the union's right to train its employees and did "not deal with the procedural guarantees regarding the right of a police officer to representation at an interrogation." The arbitrator agreed with the FOP and ruled that the grievance was not preempted, stating:

> [T]he grievance is not barred by the specific provisions of the LEOBR, and shall not be dismissed. The subject matter of the grievance goes to a practice affecting the rights of the FOP and its stewards; and not to the discipline of a law enforcement officer, procedural safeguard for that officer, or the procedures of a hearing board under the LEOBR.

The arbitrator made clear that he had only determined whether the grievance was preempted or otherwise barred by the LEOBR and did not reach the question of arbitrability or the merits of "whether there is a practice that binds the County." On September 20, 2010, the County filed, in the Circuit Court for Montgomery County, a "Petition to Vacate Arbitration Award" pursuant to the Maryland Uniform Arbitration Act.[5] *See* Md.Code (1973, 2006 Repl. Vol.) § 3–224 of the Courts and Judicial Proceedings Article. In its petition, the County argued that the "award" should be vacated because the LEOBR preempted collective bargaining and arbitration of the issue, and therefore the arbitrator exceeded his powers in asserting jurisdiction over the underlying dispute.

---

**5.** The Maryland Uniform Arbitration Act does not govern arbitration agreements between employers and employees unless, as in the instant case, the Agreement expressly provides that the Act applies. *See* Md.Code (1973, 2006 Repl.Vol.) § 3–206(b) of the Courts and Judicial Proceedings Article.

*See* § 3–224(b)(3) of the Public Safety Article ("The court shall vacate an award if . . . (3) The arbitrators exceeded their powers[.]"). The FOP filed a motion for summary judgment, arguing that the arbitrator's decision should be confirmed. The County filed a cross-motion for summary judgment. Following a hearing, the Circuit Court judge granted the FOP's motion for summary judgment and denied the County's cross-motion, ruling:

> [T]his really doesn't have anything to do with the rights of a police officer subject to possible discipline. It does have everything to do with [the] training of union employees. . . . I think that it promotes the implementation of [the] LEOBR. . . . It's not contradictory to it, nor is it preempted by [the] LEOBR. . . . This is really just whether or not somebody who is present here to train as a future participant in the proceeding is precluded from doing so simply because of the existence of an exclusive statutory disciplinary scheme which is set up under [the] LEOBR. And I just don't think that that contradicts [the] LEOBR in any way. I think it's consistent with it, its consonant with it, if anything. . . . I believe that the arbitrator has the ability to, without contradicting [the] LEOBR, and without being in violation of the collective bargaining agreement, to consider the arbitrability of this issue.

The County then noted an appeal to the Court of Special Appeals. Prior to any proceedings in the intermediate appellate court, we issued a writ of certiorari, on our initiative. *Montgomery Cnty. v. Fraternal Order of Police Lodge 35,* 424 Md. 291, 35 A.3d 488 (2012). We now address the following question:

> Does the express preemption provision of the LEOBR preclude arbitration of [the] FOP's grievance regarding the number of representatives it may have present during the disciplinary interrogation of a police officer?

We answer that question in the negative, and therefore affirm the judgment of the Circuit Court. The LEOBR is not

implicated under the facts and does not preempt arbitration of the underlying dispute.[6]

## II.

Preliminarily, we take this opportunity to clarify the procedural issue raised by the trial judge when, in confirming the determination of the arbitrator, he noted confusion as to whether a petition to "vacate" was the "correct terminology," under the circumstances. Indeed, by filing a petition to vacate the "arbitration award," the County suggested that an award was, in fact, made by the arbitrator. It used language throughout the petition that referred to the arbitrator's denial of its dispositive motion as an "award," despite its preliminary nature and the fact that arbitration on the merits had not taken place.

Appellant apparently relied on *Montgomery County v. Fraternal Order of Police Montgomery County Lodge 35, Inc.,* 147 Md.App. 659, 810 A.2d 519 (2002) (*"Lodge 35"*) as the blueprint for pursuing this procedural error. In that case the FOP requested arbitration, and the County, rather than petitioning the circuit court for a stay of arbitration, filed a motion to dismiss before the arbitrator, arguing that the particular dispute was not arbitrable. After the arbitrator denied the motion to dismiss, the County filed a "petition to vacate arbitration award" in the circuit court. The circuit court affirmed the determination of arbitrability, which was then appealed. On appeal, the intermediate appellate court stated that although the arbitrator issued a preliminary decision rather than a final award, "[n]evertheless, the parties have not argued that an arbitrator has to render a final award before a petition to vacate a preliminary decision can be filed, and we are not aware of any authority compelling that conclusion." *Lodge 35,* 147 Md.App. at 666, 810 A.2d at 523. The interme-

---

6. It is important to note that we resolve only the question of LEOBR preemption, and recognize that the ultimate question whether the shop steward training grievance amounts to a "past practice" under the CBA is an issue reserved for the arbitrator.

diate appellate court then continued to evaluate whether the arbitrator exceeded his powers and whether the "award" should be "vacated" under the Arbitration Act, Maryland Code § 3–224 of the Courts and Judicial Proceedings Article.

The reasoning of the intermediate appellate court in *Lodge 35* is incorrect because it is clear, pursuant to our case law, that a petition to vacate an arbitration award requires an actual award, *i.e.,* a final decision by an arbitrator on the merits. *See Messersmith, Inc. v. Barclay Townhouse,* 313 Md. 652, 663, 547 A.2d 1048, 1053 (1988) (noting that Md.Code § 3–208 and § 3–224 of the Courts and Judicial Proceedings Article are "mechanisms though which a court (based upon its independent assessment of the evidence thereby concluding that no agreement to arbitrate exists) is authorized to either stay an arbitration proceeding, under § 3–208, or invalidate it *after the fact,* under § 3–224(b)(5)." (emphasis added)); *Brewster v. Woodhaven Bldg. & Dev., Inc.,* 360 Md. 602, 620, 759 A.2d 738, 753–54 (2000) (noting that § 3–224 is one of three sections of the Arbitration Act which "permit parties who have *been through arbitration* to file certain *post-award* petitions in the Circuit Court . . ." (Wilner, J., dissenting on other grounds)); *Stauffer Constr. Co. v. Bd. of Educ.,* 54 Md.App. 658, 664, 460 A.2d 609, 612 (1983) ("When such an [arbitration] agreement exists, or is alleged to exist, the courts are generally enjoined by the statute from interfering with the arbitration process. Indeed, the court's jurisdiction [before arbitration is completed] may properly be invoked in but two limited contexts—to compel arbitration or to stay it."); Martin Domke, *Domke on Commercial Arbitration,* § 39:6 at 15–16 (3rd ed. 2012) ("Before an [arbitration] award is ripe for review, it must be 'definite and final,' " and resolve the parties' dispute. (footnote omitted)).

■ Despite filing an incorrect motion, however, we treat the County's "petition to vacate arbitration award," in the present case, as a motion to stay arbitration. *See Gisriel v. Ocean City Bd. of Supervisors of Elections,* 345 Md. 477, 496–497, 693 A.2d 757, 767 (1997) (noting that the "nature of [an]

action" is determined by the substance of the action, and not the caption or style of a filing). Under the Arbitration Act: "If a party denies [the] existence of the arbitration agreement, he may petition a court to stay *commenced* or threatened arbitration proceedings." Md.Code § 3–208 of the Courts and Judicial Proceedings Article (emphasis added). As the intermediate appellate court noted in *Barclay Townhouse Associates v. Stephen L. Messersmith, Inc.*, 67 Md.App. 493, 508 A.2d 507 (1986), based on § 3–208, "[i]t is clear the Legislature intended for the courts to determine the existence of the threshold agreement to arbitrate." *Barclay Townhouse Assocs.*, 67 Md.App. at 497–98, 508 A.2d at 509–10, *aff'd*, 313 Md. 652, 547 A.2d 1048 (1988).

The Circuit Court judge in the instant case engaged in the analysis necessary to rule on a motion to stay arbitration under § 3–208(c) when he considered whether the parties had agreed to arbitrate the particular dispute. Therefore, when the judge confirmed the decision of the arbitrator, he effectively denied the motion to stay and ordered arbitration. That decision was subject to immediate appeal. *See Addison v. Lochearn Nursing Home, LLC*, 411 Md. 251, 270–271, 983 A.2d 138, 150 (2009) ("[A]n order denying a petition to stay arbitration and thereby compelling arbitration was immediately appealable ... because [it] ... put the parties 'out of court.'" (discussing *Town of Chesapeake Beach v. Pessoa Constr. Co., Inc.*, 330 Md. 744, 750–54, 625 A.2d 1014, 1017–20 (1993))); *Horsey v. Horsey*, 329 Md. 392, 401–06, 620 A.2d 305, 310–12 (1993) (holding that a trial court's order directing the parties to submit their dispute to arbitration was a final and appealable judgment); *Brewster*, 360 Md. at 630–31, 759 A.2d at 753 ("[I]f the court determines [under § 3–208] that an agreement to arbitrate exists, it must order arbitration. Such an order is immediately appealable, because it exhausts the court's jurisdiction." (Wilner, J., dissenting on other grounds)).[7]

---

7. We need not, and do not decide, in the instant case, whether the arbitration has "commenced" and proceeded too far, thereby precluding a party from petitioning for a stay under § 3–208.

## III.

The parties in the instant case disagree on the appropriate standard of review. The FOP contends that we should review the Circuit Court's grant of its motion for summary judgment for legal error. Appellant, on the other hand, argues that our review of the judge's decision should be *de novo,* and cites *Lodge 35,* 147 Md.App. 659, 810 A.2d 519 for this proposition. That case cited this Court's opinion in *Messersmith, Inc. v. Barclay Townhouse,* 313 Md. 652, 547 A.2d 1048 (1988), to suggest that, when confronted with a petition to either stay arbitration or vacate an award, "a reviewing court engages in a de novo review, including an independent assessment of the evidence," *Lodge 35,* 147 Md.App. at 669, 810 A.2d at 525 (citations omitted), and continued, "[a]ccordingly, we conduct a de novo review in determining whether the parties' dispute is arbitrable." *Id.* This Court in *Messersmith Inc.,* however, was discussing a circuit court's standard of review when it said that "a court (based upon its independent assessment of the evidence thereby concluding that no agreement to arbitrate exists) is authorized to either stay an arbitration proceeding, under § 3–208, or invalidate it after the fact, under § 3–224(b)(5) [of the Courts and Judicial Proceedings Article]." *Messersmith, Inc.,* 313 Md. at 663, 547 A.2d at 1053.

When it comes to appellate procedure, however, the standard of review in either this Court or the Court of Special Appeals is determined by the circuit court's disposition of the matter. Indeed, in *Messersmith, Inc.,* the trial court was faced with cross-motions for summary judgment, and therefore, on appeal, this Court and the intermediate appellate court reviewed the trial court's holding for legal error. *See Barclay Townhouse v. Messersmith, Inc.,* 67 Md.App. 493, 508 A.2d 507 (1986) (holding that it was legally incorrect for a circuit court, in ruling on a petition to vacate an arbitration award, to defer to an arbitrator's determination of arbitrability unless it was "completely irrational."), *aff'd,* 313 Md. at 659, 547 A.2d at 1051 ("[W]hile the completely irrational standard of review may or may not represent the proper approach when

the arbitral jurisdiction is unquestioned, when the arbitrators' very authority to adjudicate the dispute is challenged, such obedience to the arbitrators' assertion of jurisdiction is clearly inapt." (footnote and citations omitted)).

■ In the instant case, the Circuit Court properly conducted a *de novo* review of the arbitrator's determination of LEOBR preemption and granted summary judgment on the matter. *See* Md. Rule 2–501. Therefore, we review that court's disposition for legal error. *See Messing v. Bank of Am., N.A.,* 373 Md. 672, 684, 821 A.2d 22, 28 (2003) ("The standard of review of a trial court's grant of a motion for summary judgment on the law is . . . whether the trial court's legal conclusions were legally correct." (citations omitted)).

## IV.

■ The primary issue before us, whether the LEOBR preempts collective bargaining and arbitration under the facts presented, is essentially one of statutory interpretation. As we recently reiterated in *Dep't of Human Resources v. Hayward,* 426 Md. 638, 45 A.3d 224 (2012):

> It is a well-settled principle that the primary objective of statutory interpretation is "to ascertain and effectuate the intention of the legislature." *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995). The first step in this inquiry is to examine the plain language of the statute, and "[i]f the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, 1206–07 (1994). Thus, "where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts do not normally look beyond the words of the statute itself to determine legislative intent." *Montgomery County Dept. of Social Services v. L.D.,* 349 Md. 239, 264, 707 A.2d 1331, 1343 (1998). Furthermore, "[w]ords may not be added to, or removed from, an unambiguous statute in order to give it a meaning not reflected

by the words the Legislature chose to use...." *Smack v. Dept. of Health and Mental Hygiene,* 378 Md. 298, 305, 835 A.2d 1175, 1179 (2003) (citation omitted).

*Hayward,* 426 Md. at 649–50, 45 A.3d at 231. *See Fraternal Order of Police, Montgomery Cnty. Lodge No. 35 v. Mehrling,* 343 Md. 155, 180, 680 A.2d 1052, 1065 (1996) (noting, in construing the LEOBR, that "[s]tatutes are to be interpreted in light of the goal, aim, or purpose for which they were enacted. Moreover, when a part of a statutory scheme, the meaning of a particular statute must be sought within the context of that entire scheme; it should not be construed in isolation." (citations omitted)). With these cannons of statutory interpretation in mind, we now turn to the statute at issue.

## A.

■■■■ The Law Enforcement Officers' Bill of Rights, Maryland Code (2003, 2011 Repl.Vol.) §§ 3–101–113 of the Public Safety Article, was enacted in 1974 with the primary purpose of "guarantee[ing] certain procedural safeguards to law enforcement officers during any investigation or interrogation that could lead to disciplinary action, demotion, or dismissal." *Coleman v. Anne Arundel Cnty. Police Dep't,* 369 Md. 108, 122, 797 A.2d 770, 778–79 (2002) (quotation and citations omitted); *DiGrazia v. Cnty. Exec. for Montgomery Cnty.,* 288 Md. 437, 452, 418 A.2d 1191, 1200 (1980) ("The legislative scheme of the LEOBR is simply this: any law-enforcement officer covered by the Act is entitled to its protections during any inquiry into his conduct which could lead to the imposition of a disciplinary sanction."); *Ocean City Police Dep't v. Marshall,* 158 Md.App. 115, 123, 854 A.2d 299, 304 (2004) (noting that the purpose of the LEOBR is "to guarantee enforcement officers certain procedural safeguards during any [disciplinary] investigation and subsequent hearing ...." (quotation omitted)). The LEOBR states that "[t]he investigation or interrogation by a law enforcement agency of a law enforcement officer ... *shall* be conducted in accordance with this section." § 3–104(a) of the Public Safety Article (emphasis added). Thus, the statute provides "the officer's exclusive

remedy in matters of departmental discipline." *Coleman,* 369 Md. at 122, 797 A.2d at 779 (citations omitted); *accord Moats v. City of Hagerstown,* 324 Md. 519, 526, 597 A.2d 972, 975 (1991) ("The language and history of the Law Enforcement Officers' Bill of Rights demonstrates an intent to establish an exclusive procedural remedy for a police officer in departmental disciplinary matters."). To establish this exclusivity, the LEOBR provides that "this subtitle supersedes any other law of the State, a county, or a municipal corporation that conflicts with this subtitle," § 3–102(a), and that "[a]ny local law is preempted by the *subject and material* of this subtitle." § 3–102(b) of the Public Safety Article (emphasis added).

From the plain language of the statute it is clear that the grievance at issue does not implicate the "subject and material" of the LEOBR because the statutory scheme is focused exclusively on the rights of law enforcement officers, *see* § 3–103 (describing the rights of law enforcement officers generally); § 3–104 (setting forth requirements for the investigation and interrogation of individual officers), and, under the facts, the FOP is attempting to assert its own right under the CBA rather than that of any of its bargaining unit members. *Boyle v. Maryland–Nat'l Capital Park & Planning Comm'n,* 385 Md. 142, 145 n. 2, 867 A.2d 1050, 1053 n. 2 (2005) ("[A]s an *entity* and not a law enforcement officer, [a company] is not entitled to any benefit under [the] LEOBR." (emphasis added)); *DiGrazia,* 288 Md. at 453, 418 A.2d at 1200 ("Implicit in [the LEOBR] ... is the assumption that a disciplinary-type complaint has been lodged against the officer....").

Indeed, the LEOBR does not provide a union with a right to file an application for a show cause order on its own behalf, as it is not a protected "officer" under that statute. *See Mohan v. Norris,* 386 Md. 63, 69, 871 A.2d 575, 578 (2005) (The " 'exclusive remedy' [of an application for a show cause order] ... may be invoked only by a 'law enforcement officer,' who [is] ... 'any *person* who, in his official capacity, is authorized by law to make arrests and who is a member of any of a number of statutorily recognized police agencies ....'" (emphasis added) (quoting § 3–101(e) of the Public Safety Arti-

cle)); *Boyle,* 385 Md. at 155, 867 A.2d at 1058 ("[T]he LEOBR procedural protections apply only when there is a prospect of disciplinary action or punitive measure. . . ."); *Coleman,* 369 Md. at 122, 797 A.2d at 779 (noting that the statute provides "the *officer's* exclusive remedy in matters of departmental discipline." (emphasis added) (citations omitted)); *Moats,* 324 Md. at 526, 597 A.2d at 975 (noting that the statute establishes an "exclusive procedural remedy *for a police officer* in departmental disciplinary matters" (emphasis added)); *DiGrazia,* 288 Md. at 452, 418 A.2d at 1200 ("Any *law-enforcement officer* covered by the Act is entitled to its protections during any inquiry into his conduct which could lead to the imposition of a disciplinary sanction." (emphasis added)). The provision allowing for an application for a show cause order, section 3–105 of the Public Safety Article, states that:

> (a) A *law enforcement officer* who is denied a right granted by this subtitle may apply to the circuit court of the county where the law enforcement officer is regularly employed for an order that directs the law enforcement agency to show cause why the right should not be granted.

> (b) The *law enforcement officer* may apply for the show cause order:

> (1) either individually or through the law enforcement officer's certified or recognized employee organization; and

> (2) at any time prior to the beginning of a hearing by the hearing board.

§ 3–105 of the Public Safety Article (emphasis added). Therefore, if the union were asserting, on behalf of a union member, that the presence of a shop steward in-training is somehow a right encompassed within the LEOBR, then any contractual grievance would be preempted by the statutory remedy of an application for a show cause order. The only recourse for the FOP to allege the denial of a right owed to the *union,* rather than an individual officer or the bargaining unit, however, is to file a contractual grievance under the CBA.

## B.

Even assuming, *arguendo,* that the FOP's grievance implicated the LEOBR, the grievance would not be preempted by the "subject and material" of that statute. *See* 3–102(b) of the Public Safety Article. The section of the LEOBR at issue in the instant case is section 3–104, which deals with the "investigation or interrogation by a law enforcement agency of a law enforcement officer for a reason that may lead to disciplinary action, demotion, or dismissal . . . ." § 3–104(a). That section provides law enforcement officers under investigation with certain rights and enumerates certain requirements of interrogations including that the interrogation take place at a reasonable time and place, § 3–104(f),(g),(h)(2), that questions be asked by and through only one interrogating officer, § 3–104(h)(1), and that the officer under interrogation have the right to counsel upon request, § 3–104(j). *See Mohan,* 386 Md. at 67–68, 871 A.2d at 577–78. The particular subsection in contention is § 3–104(d)(1) which states that:

(1) The law enforcement officer under investigation shall be informed of the name, rank, and command of:

(i) the law enforcement officer in charge of the investigation;

(ii) the interrogating officer; and

(iii) each individual present during an interrogation.

§ 3–104(d)(1) of the Public Safety Article.

The County argues that this section demonstrates that the "subject and material" of the LEOBR specifically extends to the individuals who may be present during an interrogation, thereby preempting collective bargaining on the matter and precluding the FOP's contract grievance. It advances this argument by citing two cases in which the LEOBR was held to preempt collective bargaining.

The first case cited by the County is *Moats v. City of Hagerstown,* 324 Md. 519, 597 A.2d 972 (1991), which dealt with whether a law enforcement officer could waive his rights under the LEOBR in favor of pursuing an alternate remedy under a collective bargaining agreement. In addressing the

issue, this Court examined the legislative history of the statute and found evidence of a legislative desire to ensure uniform application of the LEOBR and to prevent collective bargaining agreements from varying the rights afforded to police officers throughout the State.[8] *Moats,* 324 Md. at 527–30, 597 A.2d at 976 (quoting a veto message, by the Governor, which stated, in part, "[t]he uniformity of the system enhances its effectiveness and the public's confidence in law enforcement"). Based on this legislative history, along with the statute's language and comprehensive nature, the Court held that the LEOBR is "the exclusive remedy for law enforcement officers faced with disciplinary charges," and preempts alternate grievance procedures. *Moats,* 324 Md. at 527, 597 A.2d at 976. The County in the instant case quotes language from *Moats* that, "the [LEOBR] is to be a law that is supreme and all encompassing, within its State-wide sphere of operations," *Moats,* 324 Md. at 527, 597 A.2d at 976 (quotation omitted), to argue, essentially, that anything tangentially related to a procedure under the LEOBR cannot be the subject of local law or collective bargaining. It is clear to us, however, that this statement from *Moats* merely establishes that the LEOBR is the exclusive mechanism through which an officer can claim procedural deprivations regarding an investigation or interrogation within the statute's purview. Indeed, the County acknowledges that the parties' CBA reflects the holding of *Moats* in Article 45(a), which states:

> *Section A. Non–LEOBR Personnel Actions.* When any personnel action is taken or not taken regarding an employee, which action is *not required* to be processed pursuant to the procedures set forth in the Law Enforcement Officers' Bill of Rights, "LEOBR," the employee shall have the right to grieve and/or arbitrate said action pursuant to the procedures set forth in Article 8 of this Agreement. (emphasis added) (internal citations omitted).

---

**8.** There are two instances where collective bargaining is expressly permitted under the LEOBR. *See* note 4, *supra.*

The second case relied on by the County is *Montgomery County v. Fraternal Order of Police Montgomery County Lodge 35, Inc.,* 147 Md.App. 659, 810 A.2d 519 (2002) (*"Lodge 35"*). In that case, the FOP and the County had negotiated an alternate method of forming a hearing board, as permitted by the LEOBR, but had, according to the FOP, agreed that the method would not apply to emergency suspension hearings. Pursuant to the facts, an officer under investigation was advised that she had the right to an emergency suspension hearing before a one-member board. The FOP filed a grievance under the CBA, on behalf of the officer, arguing that, in the absence of a collectively bargained alternate procedure, an emergency suspension hearing was required to be conducted by a three-member board in accordance with the LEOBR. The intermediate appellate court examined the language of the LEOBR and noted that, although it expressly provided for the negotiation of an alternate hearing board, it simultaneously prohibited parties from arbitrating over the agreed-upon composition.[9] Therefore, the court held that because the "plain meaning of the LEOBR" directly conflicted with the grievance at issue, arbitration was preempted by the "subject and material" of the LEOBR. *See Lodge 35,* 147 Md.App. at 671, 810 A.2d at 526.

In *Lodge 35,* the County took the position that the FOP advances in the instant case, and argued that non-conflicting collective bargaining agreements are not preempted by the LEOBR. While the intermediate appellate court in that case found a direct conflict between the LEOBR and the purported grievance, it agreed with the general proposition "that preemption does not necessarily prohibit all local non-conflicting implementation and supplementation...." *Lodge 35,* 147 Md. App. at 670, 810 A.2d at 525–26; *accord Balt. City Police Dep't v. Andrew,* 318 Md. 3, 10–13, 566 A.2d 755, 758–59 (1989) (holding that a conflicting statute was preempted by the

---

9. The LEOBR has since been modified to no longer prohibit arbitration regarding a collectively bargained alternate hearing board. *See* § 3–107(c)(4).

LEOBR by comparing the statute at issue to one that the Court found could be "harmonized" with the LEOBR because the LEOBR "contained no explicit prohibition" of its requirements).

■■■ We agree that this is a correct interpretation of the legislative scheme of the LEOBR and its preemption provision. Section 3–102 was added to the LEOBR primarily "in order to deal with the relationship between [the LEOBR] and other statutes providing alternative remedies for police officers facing disciplinary sanctions." *Mohan*, 386 Md. at 68–69, 871 A.2d at 578 (citing a statutory amendment to the LEOBR, later recodified, without substantive change, at § 3–102 of the Public Safety Article); *Mohan v. Norris*, 158 Md.App. 45, 51, 854 A.2d 259, 262 (2004) ("The LEOBR applies only to police disciplinary matters, and preempts all other conflicting statutes on that subject[.]" (construing Md.Code (1957, 1996 Repl. Vol., 2002 Supp.), Article 27, § 734B, recodified at § 3–102 of the Public Safety Article), *aff'd*, 386 Md. 63, 871 A.2d 575). Thus, as we stated in *Coleman v. Anne Arundel County Police Department*, 369 Md. 108, 797 A.2d 770 (2002), the LEOBR "establishes a uniform system of police discipline throughout the State," and section 3–102 is a "preemption of *conflicting* State, county or municipal laws, ordinances or regulations." *Coleman*, 369 Md. at 140, 797 A.2d at 790 (quoting the legislative history discussion in *Moats*, 324 Md. at 527–28, 597 A.2d at 976, and citing Art. 27, § 734B, now codified at § 3–102 of the Public Safety Article (emphasis added)); *see Md.–Nat'l Capital Park & Planning Comm'n v. Anderson*, 395 Md. 172, 190–93, 909 A.2d 694, 704–07 (2006) (holding that the LEOBR superceded a conflicting provision within the Administrative Procedure Act); *DiGrazia*, 288 Md. at 454, 418 A.2d at 1201 (noting the LEOBR's preemption provision did not unduly restrict the authority of a county executive to remove a law enforcement official, because "[t]he Act simply restricts the right of the appointing authority to discharge such an official for a reason that *runs afoul* of its protective provisions." (emphasis added)); *Miller v. Balt. Cnty. Police Dep't*, 179 Md.App. 370, 381–93, 946 A.2d 1, 8–15

(2008) (holding that the police department's issuance of subpoenas during a pre-charge investigation violated the LEOBR because the statute did not provide for the practice and its use would violate the spirit of the statute's notice provisions).

■■■ In the instant case, the fact that the LEOBR expressly provides for the presence of certain persons during an interrogation does not foreclose collective bargaining agreements on the subject that do not purport to affect the procedural safeguards afforded to officers under investigation and interrogation. *See Coleman,* 369 Md. at 147, 797 A.2d at 794 (determining that "preponderance of the evidence" was the appropriate standard for a LEOBR hearing where the statute was silent on standard of review and "[t]here [was] no question . . . that [the officer] was afforded the panoply of rights provided by the LEOBR."); *Stuples v. Balt. City Police Dep't,* 119 Md.App. 221, 236–37, 704 A.2d 518, 526 (1998) (holding that a LEOBR provision allowing the Chief of Police to impose emergency suspensions without pay in certain circumstances, "by no means implies that pay may not be withheld in any other circumstances").

In contrast to the situations presented in *Moats* and *Lodge 35,* where there was a direct conflict between the "subject and material" of the LEOBR and the pursuit of a grievance under a collective bargaining agreement, the FOP's grievance in the instant case deals only with its own right to train its employees, and does not attempt to add to or curtail existing rights under the LEOBR. The LEOBR, while "supreme and all encompassing," in regards to any provisions contrary to its express language or legislative purpose, does not foreclose any and all collective bargaining affecting the logistics of interrogations. Indeed, not only does the LEOBR not purport to fully encompass all individuals who may be present during an interrogation, but the LEOBR specifically contemplates the potential presence of individuals beyond the interrogator and the officer's representative. Section 3–104(d)(1) explains that an officer subject to interrogation must be informed of "the name, rank, and command of" not only the law enforcement

officer in charge of the investigation and the interrogating officer, but also "each individual present during an interrogation." The County argues that this provision most likely only "permits the Department to have additional personnel present," because, assumedly, the officer would be familiar with his or her representative. This ignores the possibility that the officer may not know the particular steward-in-training assigned by the FOP to observe the interrogation, and the fact that shop stewards will likely also have a "rank" and "command," as they are typically police officers themselves.[10] Thus, it would be too broad a reading of the LEOBR's "subject and material" preemption provision to not allow parties to bargain as to the presence of a union trainee who is not a participant in the interrogation, and whose presence is not alleged or demonstrated to affect the rights of a police officer subject to interrogation in any way.

Therefore, we hold, under the facts presented, that the LEOBR does not preempt collective bargaining and subsequent arbitration of the underlying grievance. The grievance does not implicate the LEOBR because the union is asserting its own right to train shop stewards during interrogations, and further, there is no allegation that the practice increases, impinges upon, or otherwise affects the substantive rights of an officer.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED. APPELLANT TO PAY THE COSTS.**

---

10. The FOP also points to an Opinion of the Attorney General which construed § 3–104(d)(1) as allowing Ethics Commission staff to be present during an interrogation because it "envisions the possible presence of persons other than the officer doing the questioning, because it requires disclosure to the officer concerning 'all persons present during the interrogation.'" 72 Op. Attorney General 246, 255–56 (1987) (footnote omitted).