REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 257

September Term, 2015

_____

J. THOMAS MANGER, *et al.*

v.

FRATERNAL ORDER OF POLICE,
MONTGOMERY COUNTY LODGE 35, INC.

_____

Wright,
Arthur,
Zarnoch, Robert A.,
    (Retired, Specially Assigned),

JJ.

_____

Opinion by Zarnoch, J.

_____

Filed:  February 25, 2016

The Law Enforcement Officers' Bill of Rights ("LEOBR"), enacted in 1974 and presently codified at Maryland Code (2003, 2011 Repl. Vol.), §§ 3-101 through -113 of the Public Safety Article ("P.S."), provides procedural protections for law enforcement officers under internal investigation. At issue in this appeal is the requirement that a police department keep a "complete record" of any interrogation of a police officer facing potential disciplinary proceedings. *See* P.S. § 3-104(k).

In late 2014, appellant, the Montgomery County Police Department ("MCPD" or the "Department") altered its interrogation policy to utilize video recording technology to keep a complete record of interrogations of officers. When three officers were notified that they had been scheduled for interrogation, appellee, the Fraternal Order of Police, Lodge 35 (the "FOP"), filed a show cause petition on behalf of the officers in the Circuit Court for Montgomery County to enjoin the Department from keeping a video record of the interrogations. After a hearing, the circuit court found in favor of the FOP, ordered the officers' interrogations to proceed without video recording, and issued an injunction prohibiting video recording of other officer interrogations.

The Department appealed and presents one question for our review:

Does the LEOBR's requirement that a law enforcement agency keep a "complete record" of its interrogation of a law enforcement officer, which "may be written, taped, or transcribed," limit the law enforcement agency to using audio tape and forbid the law enforcement agency from using video tape to record the interrogation?

Because we find nothing in the LEOBR that bars a police department from using a video recorder to keep a complete record of an interrogation conducted pursuant to the

LEOBR, we reverse the judgment of the circuit court.

## BACKGROUND

Three police officers employed by Montgomery County Police Department came under internal investigation in early 2015, after an arrestee filed a complaint against them. Before this investigation began, J. Thomas Manger, Chief of Police for the MCPD, in a memorandum dated November 24, 2014, directed the Internal Affairs Division to begin "video as well as audio recording of interrogations pursuant to LEOBR Sec. 3-104(k)(2)." Prior to this time, interrogations were audio recorded only. Before the interrogation could take place, the FOP filed a show cause petition in the circuit court on behalf of the three officers under investigation.[1] The contested provision, § 3-104(k), provides that a department shall keep a "complete record" of its interrogation of an officer and that this record "may be written, taped, or transcribed."[2]

At a hearing held on March 17, 2015, the FOP sought to halt the video recording of all officer interrogations, arguing that the term "taped" in § 3-104(k)(2) permitted only audio recording of interrogations, and, thus, keeping a video record of the interrogation violated the LEOBR. The Department responded that the show cause petition was inappropriate because no right of the officers had been infringed. It also argued that

[1] The officers under investigation were within the bargaining unit represented by Fraternal Order of Police, Lodge 35, and the FOP typically represents officers investigated under the LEOBR.

[2] Unless otherwise indicated, all subsequent citations to the provisions of the LEOBR shall refer to the sections of the Public Safety Article.

interpreting the word "taped" to encompass video recording furthered the complete record requirement and allowed the Department to keep video records of officer interrogations.

On March 26, 2015, the court issued an opinion and an order finding for the FOP and prohibiting videotaped interrogations. Discounting the Department's arguments, the court found that video recording could jeopardize the officer's right to a fair hearing, and, accordingly, ruled that a show cause petition was appropriate. Next, the court determined that both the purpose and the specific terms of the LEOBR established that the provision at issue did not authorize video recording officers' interrogations. Specifically, it held that "the statute, as written does not encompass video recording," and enjoined appellants from using video recording devices during LEOBR-governed interrogations. The court also ordered the interrogations of the three officers under investigation to proceed without using video recording as a record-keeping method. [3]

The Department appealed to this Court on April 15, 2015.

### DISCUSSION

The heart of this case involves an interpretation of the LEOBR. We review a

---

[3] Although the parties indicated that the interrogations of the three officers have since been completed without video recording pursuant to the circuit court's order, the issue presented here is not moot because it is capable of repetition, yet evading review. *Hammen v. Baltimore County Police Dept.*, 373 Md. 440, 451-52 (2003). Under the strict statutory deadlines of the LEOBR, the challenged act—the video recording of an investigatory interview that may result in the imposition of discipline—is an act of such short duration that it would preclude the officer from obtaining review. The recording issue becomes moot as soon as the interrogation goes forward with or without video recording. *See City of Round Rock v. Rodriguez*, 317 S.W.3d 871, 879-80 (Tex. App. 2010), *rev'd on other grounds,* 399 S.W.3d 130 (Tex. 2013).

circuit court's interpretation of statutory provisions *de novo*. *Maryland-Nat'l Capital Park & Planning Comm'n v. Anderson*, 395 Md. 172, 181 (2006). In statutory construction, three factors predominate: 1) statutory text; 2) statutory purpose; and 3) consequences of different statutory interpretations. *Town of Oxford v. Koste*, 204 Md. App. 578, 585 (2012), *aff'd,* 431 Md. 14 (2013). "Text is the plain language of the relevant provision, typically given its ordinary meaning, viewed in context, considered in light of the whole statute, and generally evaluated for ambiguity." *Id.* (Citations omitted). Legislative purpose, gleaned either from the text or from external sources, informs our reading of the statute. *Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md. 505, 512-15 (1987). Finally, "[a]n examination of interpretive consequences, either as a comparison of the results of each proffered construction, or as a principle of avoidance of an absurd or unreasonable reading, grounds the court's interpretation in reality." *Koste*, 204 Md. App. at 586 (Citations omitted).

Our analysis begins with an overview of the statute in question. The Law Enforcement Officers' Bill of Rights was enacted in 1974 to provide procedural safeguards to police officers facing potential disciplinary proceedings. Section 3-104 describes the procedures that must be followed in an investigation or interrogation by a law enforcement agency of a law enforcement officer for a reason that may lead to disciplinary action, demotion, or dismissal. For example, the section specifies who may interrogate the officer, provides restrictions on the time, place, and conduct of the interrogation, and generally gives greater protections to officers than are given to

ordinary criminal suspects.[4]

The subsection at issue here, § 3-104(k), specifies that:

(1) A complete record shall be kept of the entire interrogation, including all recess periods, of the law enforcement officer.

(2) The record may be written, taped, or transcribed.

(3) On completion of the investigation, and on request of the law enforcement officer under investigation or the law enforcement officer's counsel or representative, a copy of the record of the interrogation shall be made available at least 10 days before a hearing.

---

[4] The Court of Appeals described these protections in detail in *Mohan v. Norris*, 386 Md. 63, 67-68 (2005):

These procedural protections include, among others, the right to be informed in writing of the nature of an investigation prior to any interrogation, the right to reasonable limitations on the structure, time, and place of an interrogation, the right to a complete written or transcribed record of any interrogation, the right to be notified of the name of any witness and all charges and specifications against the officer not less than ten days prior to any hearing, and the right to a copy of the investigatory file and any exculpatory information. § 3-104. If an investigation results in the recommendation of some disciplinary or punitive action against a law enforcement officer, the LEOBR, with limited exceptions, entitles an officer to a hearing before a hearing board composed of at least three other police officers. § 3-107. Procedures governing the hearing include the right to cross-examination and the power of the hearing board to compel the attendance of witnesses through subpoenas. *Id.* If, after a hearing and a finding of guilt, the hearing board determines that a disciplinary or punitive sanction is appropriate, the board makes recommendations to the chief of police of the appropriate police agency, who then must review the recommendations and issue a final order within 30 days. § 3-108. A final order may be appealed to the local circuit court and, thereafter, to the Court of Special Appeals. § 3-109. If a law enforcement officer is denied any of the rights afforded by the LEOBR, he or she may apply to a circuit court for an order directing the law enforcement agency to show cause why a right should not be granted. § 3-105.

In this case, in accordance with the requirement in subsection (k)(1) that a "complete record shall be kept of the entire interrogation, including all recess periods, of the law enforcement officer," the Department implemented procedures to visually record all interrogations.

The FOP contends that video recording violates subsection (k)(2) because the term "tape[]" does not encompass videotape or other visual recording. The FOP urges us to interpret subsection (k)(2) as providing the exclusive means to record the interrogation, i.e., in written form, audio tape, or transcription. We see no reason to do so. The plain text of the statute requires a "complete record" to "be kept of the entire interrogation[.]" Subsection (k)(2) lists several means of obtaining a complete record, declaring that the "record *may* be written, taped, or transcribed." (Emphasis added). Nothing in the text of the statute indicates that the enumerated methods of creating a record are the exclusive methods that a police department may employ. On the contrary, the use of the term "may" indicates that the methods described are non-exclusive. This contrasts with the legislature's use of the word "shall" in subsection (k)(1) to mandate that a complete record be kept. Subsection (k)(2) is permissive in nature, while subsection (k)(1) is mandatory.

The FOP urges us to employ the canon of statutory construction, *noscitur a sociis*, which suggests "that words grouped in a list should be given related meaning," *Massachusetts v. Morash*, 490 U.S. 107, 114-115 (1989), to interpret the words "written, taped, or transcribed" to refer to methods of preserving spoken word and not other aspects of the interrogation.

6

We first note that subsection (k)(1) requires that the record include more than just the unadorned words uttered during the interrogation, as demonstrated by the statute's requirement that the record preserve the recess periods during the interrogation. Further, we would be remiss if we did not observe that the methods of recording suggested by the statute are able to record other information beyond the words spoken in interrogation. For example, many students of depositions and court transcripts know that attorneys occasionally request that the "record reflect" an action taken by a witness or a deponent, such as making a pointing gesture toward a defendant or nodding in agreement. A written or transcribed interrogation implemented pursuant to the LEOBR may contain these items as well.

An audiotape recording would contain even more information. The recording would preserve the atmosphere of questioning and the tenor of the officer's response. It would also record the seconds or minutes that pass between the asking of the question and the response. And, it would record ineffable qualities such as confidence or anger, qualities certainly missing from a written or transcribed record. Thus, even employing the canon of statutory interpretation *noscitur a sociis*, the three words in subsection (k)(2) do not demand the narrow interpretation of only the spoken word. The disparate information that may be collected by each method belies the FOP's interpretation of the subsection. In sum, we do not observe a commonality among these three methods—writing, taping, and transcribing—that requires us to interpret the statute as requiring the preservation of the spoken word and nothing more.

Taking another tack, the FOP requests that we define the term, "taped," to include

7

only audio recordings because audiotape was the most commonly used tape technology at the time.[5] The FOP argues that the General Assembly would have inserted "videotape" or "DVD" during the recodification of the LEOBR sections of Article 27 into the Public Safety Article in 2003.[6] "It is true that in endeavoring to ascertain legislative intent we may consider the circumstances existing and events occurring at the time of the statute's passage; however, we must consider also that our laws are addressed to the future." *Kindley v. Governor of Maryland*, 289 Md. 620, 625 (1981) (Citation omitted). The ultimate purpose of section 3-104(k)—to keep complete records of officer interrogations—and the use of the non-exclusive "may," suggests that the legislature intended the provision to be capable of encompassing circumstances and situations which did not exist at the time of its enactment. *See id.* (citing 2A A. Sutherland, *Statutes and Statutory Construction* § 49.01 (4th ed. C. D. Sands 1973)). In addition, a construction of a statute which is "unreasonable, illogical or inconsistent with common sense should be avoided." *Id.* (citing *Comptroller v. John C. Louis Co.*, 285 Md. 527, 539 (1979)).

---

[5] Videotape technology—the recording of moving images with magnetic tape—was invented in the early 1950s, and was used primarily in broadcast television throughout much of the 1950s and 1960s. *See* Eric D. Daniel, C. Denis Mee, & Mark H. Clark, *Magnetic Recording: The First 100 Years* 137-41 (1999). With the advent of the video cassette in the 1970s, video recording technology slowly became available to consumers. *Id.* at 182-98. Videotape is still used for archival purposes, but has been supplanted in most recording situations by digital video recording technology. *See* Antonio Manriquez & Tom McCluskey, *Video Production 101* 9-13 (2014).

[6] We observe that the Revisor's Note from the 2003 recodification declares that section 3-104 contains "language derived without substantive change from former Art. 27." Laws of 2003, ch. 5.

Keeping these principles in mind, we do not believe that the General Assembly intended to limit the methods of recording to those available when the LEOBR was enacted.

The FOP argues that allowing the Department to videotape interrogations will frustrate the purpose of the LEOBR and prejudice officers under investigation by giving the hearing board video evidence of an officer's interrogation while making available only the written or transcribed testimony of other witnesses. On the contrary, however, we reach our conclusion with due regard to the purpose of the Law Enforcement Officers' Bill of Rights, i.e., "'guarantee[ing] certain procedural safeguards to law enforcement officers during any investigation or interrogation that could lead to disciplinary action, demotion, or dismissal.'" *Montgomery County, Maryland v. Fraternal Order of Police, Montgomery County Lodge 35, Inc.*, 427 Md. 561, 573 (2012) (quoting *Coleman v. Anne Arundel Cnty. Police Dep't*, 369 Md. 108, 122 (2002)). Although the FOP argues that the sole purpose of the LEOBR is to give rights to officers, the text of the statute reveals a balance between the rights of officers and the prerogatives of the police department. *See Miller v. Baltimore County Police Dept.*, 179 Md. App. 370, 384 (2008) (identifying substantial "rights by a police department during the course of an investigation [of an officer], such as interrogation and testing of blood alcohol, blood, breath, urine, and polygraph examination"). In our view, the LEOBR is not intended solely to benefit police officers—instead, it creates procedural rights while leaving to the reasonable discretion of the police department how best to investigate and remedy internal misconduct.

Looking at subsection (k) as a whole, it is clear that the emphasis is on keeping a

complete record and not on the means used to create that record. *See Widomski v. Chief of Police of Baltimore County*, 41 Md. App. 361, 373 (1979) (emphasizing that the record may be kept using a combination of techniques, "so long as there is a complete and preserved record for the review by counsel and by a court, if there be an appeal"). Further, it places discretion in the hands of the Department to determine how to keep a complete record. Interpreting § 3-104(k) to allow methods of recording not widely available in 1974 does not frustrate the purpose of the LEOBR in providing procedural safeguards, in this case, keeping a complete record of the interrogation.

Presumably, a complete record of the interrogation, including breaks, allows the hearing board to understand the context in which any potentially incriminatory or exculpatory statements were made. It would be illogical to think that the legislature would want to restrict the means of recording interrogations to those only predominant at the time the bill was enacted—especially if technological advances allow a more complete record to be kept.

In the intervening years since 1974, the use of video evidence has become commonplace and videotape technology has been, to some degree, superseded by digital video recording. *See White v. State*, 223 Md. App. 353, 392 (2015) (two-way, live video testimony of remote witness); *Videotape Evidence*, 44 Am. Jur. Trials 171 (Originally published in 1992). Indeed, the Open Meetings Act and the Maryland Rules currently refer to videotape and video recording seemingly without distinction. *See* Md. Code (2014), General Provisions Art. § 3-306(e) (using the terms "video streaming" and "tape recording" interchangeably); *compare* Maryland Rule 8-415 (discussing appellate

10

procedures when lower court record is made by videotape recording pursuant to Maryland Rule 16-405) *with* Maryland Rule 16-405 (describing audio-video recordings and not referring to "tape"). Possibly, years from now, a different recording method may become commonplace, supplanting video recording because it provides even greater fidelity in depicting an event.

In view of the plain text of the statute, its purpose, the consequences of restricting the "complete record" requirement to written and audio recordings only, and the fact that "our laws are addressed to the future," *Kindley*, 289 Md. at 625, we hold that interrogations conducted pursuant to the LEOBR may be visually recorded in order to keep a complete record.[7]

We are, however, mindful of the FOP's concern that a video recording that captures only the image and words of the officer under interrogation could present a biased view of the interrogation and would fail to capture a "complete record" as required by § 3-104(k). To the extent that a police department uses video technology, it should endeavor to record all present at the interrogation, and especially the interrogator and the officer under investigation. Nevertheless, as the above analysis shows, the Department is permitted to utilize video recording methods to keep a complete record of officer

---

[7] In oral argument, the Department argued that the word "taped" should be read to include digital video recording, as well as videotape recording. Under the statute, it is possible that the complete record requirement could be satisfied using digital video recording as well. However, the Department, in its question presented, asked us only to consider whether the LEOBR "forbid[s] the law enforcement agency from using video tape to record the interrogation." Thus, we need not conclusively decide the digital recording issue.

interrogations.  For this reason, we reverse the decision of the circuit court and dissolve

the injunction prohibiting the Department from conducting interrogations by videotape.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED.  INJUNCTION DISSOLVED.  COSTS TO BE PAID BY APPELLEE.**

12